UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------X
CLOSE-UP INTERNATIONAL, INC.,
KINOVIDEOOBYEDINENIE KRUPNIY PLAN
and FEDERAL STATE UNITARY               <u>MEMORANDUM AND ORDER</u>
ENTERPRISE KINOKONTSERN MOSFILM,
                                        Civil Action No.
            Plaintiffs,                 02-CV-2363 (DGT)

        -against-

JOSEPH BEROV, NATASHA ORLOVA, THE
RIGMA AMERICA CORPORATION AND
GROUP, RUSSIAN ENTERTAINMENT AND
WHOLESALE, INC. D/B/A ST.
PETERSBURG PUBLISHING HOUSE AND
GROUP and RUSSIAN DISTRIBUTERS
INC.,

            Defendants.

-------------------------------X

Trager, J:

        Plaintiffs Close-Up International, Inc.,

Kinovideoobyedinenie Krupniy Plan and Federal State Unitary

Enterprise Kinokontsern Mosfilm (collectively "Close-Up" or

"plaintiffs") seek attorney's fees and costs from defendants

Joseph Berov and the Rigma America Corporation and Group

(collectively "Berov" or "defendants").[1]  Plaintiffs also seek an

award of prejudgment interest.  Defendants have made a cross-

motion pursuant to Rule 60(b)(6) seeking a reduction in the

---

[1]     Plaintiffs reached a separate settlement agreement with
defendants Natasha Orlova, Russian Entertainment and Wholesale,
Inc. d/b/a St. Petersburg Publishing House and Group and Russian
Distributors Inc. (collectively "REW" or "settling defendants").

judgment.

The parties are presumed to be familiar with the facts of this case. For the following reasons, plaintiffs are awarded $323,004.88 for attorney's fees and costs. Plaintiffs' motion for prejudgment interest is denied. Defendants' cross-motion for a reduction in the judgment is also denied.

**(1)**

**Attorney's Fees**

**a.    Eligibility for Attorney's Fees**

Plaintiffs are seeking costs and attorney's fees pursuant to the Copyright Act, 17 U.S.C. § 505, which provides that:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

The Copyright Act elsewhere states that attorney's fees are only awarded for works that were registered at the time of infringement or within three months after the first publication of the work. 17 U.S.C. § 412.

"Attorney's fees are not to be awarded automatically to a prevailing party, . . . but 'only as a matter of the court's discretion.'" <u>Knitwaves Inc. v. Lollytogs Ltd.</u>, 71 F.3d 996,

1011 (2d Cir. 1995) (quoting <u>Fogerty v. Fantasy, Inc.</u>, 510 U.S. 517, 534 (1994)).  When deciding whether to award attorney's fees, courts have been instructed to consider "several nonexclusive factors" including "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." <u>Matthew Bender & Co. v. West Publ'g Co.</u>, 240 F.3d 116, 121 (2d Cir. 2001) (quoting <u>Fogerty</u>, 510 U.S. at 534 n.19).  A court's award of attorney's fees must also be "faithful to the purposes of the Copyright Act."  <u>Id.</u> (quoting <u>Fogerty</u>, 510 U.S. at 534 n.19).

Based on these factors, an award of attorney's fees is appropriate in this case.  Specifically, defendants were guilty of willful infringement of plaintiffs' protected works, behavior which was "objectively unreasonable" in light of the requirements of the Copyright Act.  Berov's primary defense against plaintiffs' claims of infringement was that his actions were authorized by a "Certificate of Authority," but this defense was entirely without merit.  An award of attorney's fees in this case conforms with the goals of the Copyright Act, which encourages owners to protect their works in court, and which attempts to deter the willful infringement of protected materials.  <u>See</u> <u>Kepner-Tregoe, Inc. v. Vroom</u>, 186 F.3d 283, 289 (2d Cir. 1999)

(affirming award of attorney's fees under the Copyright Act as "justified based on the court's finding of willfulness" and "in line with the statutory goal of deterrence"); <u>Yash Raj Films (USA) Inc. v. Movie Time Video USA, Inc.</u>, No. 04-CV-5107 (JG) (RML), 2007 U.S. Dist. LEXIS 68357, at *12 (E.D.N.Y. July 26, 2007) (Magistrate Judge's Report and Recommendation) (finding that "an award of attorney's fees is justified where the infringement was willful"); <u>Getaped.com, Inc. v. Cangemi</u>, 188 F. Supp. 2d 398, 406 (S.D.N.Y. 2002) ("An award of attorney's fees is justified, inter alia, where the infringement was willful, as here.").

Therefore, plaintiffs are entitled to an award of attorney's fees under the Copyright Act. Next, each of defendants' objections to plaintiffs' fee request will be considered in turn.

**b.** **Apportionment of Fees Between Registered and Non-Registered Works**

Both sides agree that to be eligible for attorney's fees under the Copyright Act, a work must be registered at the time of the first infringement or registration must be made within three months after the first publication of the work. <u>See</u> 17 U.S.C. § 412. The jury found that defendants were liable for infringing 383 works, of which nine were registered with the Copyright Office before infringement or within three months of first publication. Defendants ask that the attorney's fees application

4

"be apportioned between the 374 works that were not registered
pre-infringement and the 9 (or less than 2.5% of the total works
in issue) that were." Defs.' Opp. Br. at 10. Plaintiffs counter
that their fee request should not be reduced at all, because "it
is impossible to separate time between the registered and
unregistered works." Pls.' Opening Br. at 16.

Both of these positions are untenable. The starting point
for this analysis should be the amount of time that plaintiffs'
attorneys would have spent on this case if only the nine
registered acts were at issue. See Knitwaves, Inc. v. Lollytogs,
Ltd, No. 92 Civ. 6285 (JSM), 1996 U.S. Dist. LEXIS 2650 (S.D.N.Y.
Mar. 7, 1996), aff'd, No. 96-7402, 1996 U.S. App. LEXIS 30737 (2d
Cir. Nov. 22, 1996). Clearly, defendants cannot reasonably claim
that plaintiffs' attorneys would have spent 97.5% less time on
this case if they were only litigating the nine registered works.
Other courts have agreed that it is inappropriate to reduce
attorney's fees by the harsh mathematical formula requested by
defendants. See id., 1996 U.S. Dist. LEXIS 2650, at *3-4; Itar-
Tass Russian News Agency v. Russian Kurier, Inc., No. 95 Civ.
2144 (JGK), 1997 U.S. Dist. LEXIS 8297, at * 10 (S.D.N.Y. June
13, 1997) (awarding 50% of requested attorney's fees where only
28 of the 345 infringed works were registered under the Copyright
Act).

On the other hand, plaintiffs are wrong to claim that their

attorneys would have spent just as much time on this case if only
the nine registered works were at issue.  It is true, as
plaintiffs' prior attorney Julian Lowenfeld ("Lowenfeld") argues
in his supporting declaration, that the legal work on this case
prior to the damages phase would have been the same "regardless
of the number of films registered."  See Lowenfeld Decl. ¶ 12.
But even Lowenfeld acknowledges that "a distinction exists in the
portion of the case which involved establishing and proving
damages."  Id. ¶ 13.  Because of this distinction, some
apportionment of the attorney's fees between registered and non-
registered works is required.

　　　This is most apparent in the trial phase of this case.  When
the jury trial on damages began, plaintiffs sought statutory
damages for eleven motion pictures that they claimed were
registered under the Copyright Act.  Trial Tr., June 11, 2007,
19:2-9.  This demand for statutory damages, at a maximum of
$150,000 per infringed work, stated a claim for at most $1.65
million.  Yet on the eve of trial plaintiffs also requested a
prejudgment attachment order for $10 million, see Docket Entry
("DE") 192, and issued a press release claiming that they
expected damages to "range from 11 to 57 million dollars," see
Richards Decl. Ex. F.  Clearly, plaintiffs expected damages far
in excess of the statutory damages available to them under the
Copyright Act.  Plaintiffs' legal work in preparation for and

during the trial on damages reflected that expectation.

The bulk of plaintiffs' evidence at trial demonstrated how defendants' infringement affected plaintiffs' sales of Russian-language videotapes. This evidence was primarily necessary to prove actual damages, not statutory damages for the registered works. The cost of presenting this evidence is, therefore, not properly reimbursable under the Copyright Act.

Plaintiffs insist, however, that all of this evidence was necessary to establish willfulness and their claim for the maximum statutory damages for the registered works. It is certainly true that some of this evidence was made necessary by Berov's refusal to concede willful infringement.[2] Nonetheless, plaintiffs had already been granted summary judgment on liability prior to trial. See DE 154. There was little question that Berov's infringement was willful. Therefore, if only the statutory damages for these nine registered works was at stake, it seems likely that a jury damages trial could have been avoided, or that the parties might have reached a settlement agreement, after Berov was found liable for infringement in May 2006.

In order to apportion the attorney's fees between the

---

[2] For example, Berov persisted at trial in arguing that he believed his infringement was protected by the "Certificate of Authority," long after this argument had been fully discredited. See Trial Tr., June 13, 2007, 332-34.

registered and non-registered works for the damages phase of this
case, plaintiffs' fee request for the work done by Harvey Shapiro
("Shapiro") and his firm Sargoy, Stein, Rosen & Shapiro will be
reduced by half. Although there is no perfect mathematical
formula to be applied, a 50% reduction in the Shapiro fees
appears appropriate here for three reasons. First, this 50%
reduction is suggested by the damages awarded to plaintiffs at
trial. The full jury award was $2.754 million, of which $1.35
million was for statutory damages under the Copyright Act and
$1.404 million was for infringement of the other 374 works. The
fact that the registered works accounted for slightly less than
half of the plaintiffs' final damage award indicates that a 50%
reduction is appropriate. Second, this formula has been followed
by other courts in similar circumstances. <u>See</u> <u>Itar-Tass Russian
News Agency v. Russian Kurier, Inc.</u>, No. 95 Civ. 2144 (JGK), 1997
U.S. Dist. LEXIS 8297, at * 10 (S.D.N.Y. June 13, 1997) (awarding
50% of attorney's fees where only 28 of the 345 infringed works
were registered under the Copyright Act).

Third, this reduction is supported by Shapiro's own
description of his efforts. According to Shapiro's supporting
affirmation, less than half of his attorney's fees were incurred
between June 1, 2005 and April 30, 2007, when Shapiro was working
on issues (including Berov's objections to Shapiro's
representation of Close-Up, a motion to hold defendants in

8

contempt and the motion for summary judgment) which related to all of the works in this case. Shapiro Aff. ¶ 8. The rest of Shapiro's fees were incurred after May 1, 2007, largely because of the jury trial on damages. Id. ¶ 9. Reducing Shapiro's fees by half will allow plaintiffs to be fully reimbursed for the earlier work Shapiro performed on this case, while also recognizing that the work preparing for and conducting the damages trial was primarily (though not exclusively) related to the non-registered works for which attorney's fees are unavailable.

**c.   Objections to Knapp Fees**

Defendants object to the fee request for plaintiffs' prior counsel, Charles E. Knapp ("Knapp"), because it is not supported by contemporaneous time records. Plaintiffs' request is documented only by a July 9, 2003 retainer agreement which specified that plaintiffs would pay Knapp a $25,000 flat fee plus 10% of any money judgment recovered in this action. Ganem Aff. Ex. P. According to plaintiffs, Knapp collected the $25,000 but relinquished his contingency fee when he ceased representing plaintiffs in 2005. See Ganem Aff. ¶¶ 27-29.

As defendants point out, it is a well-settled rule in the Second Circuit that "any attorney . . . who applies for court-ordered compensation in this Circuit . . . must document the

application with contemporaneous time records. These records should specify, for each attorney, the date, the hours expended, and the nature of the work done." New York State Assoc. for Retarded Children v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983). See also Riordan v. Nationwide Mut. Fire Ins. Co., 977 F.2d 47, 53 (2d Cir. 1992) (explaining strict rule in New York federal courts requiring the denial of a motion for fees for failure to provide contemporaneous time records); Schwartz v. Chan, 142 F. Supp. 2d 325, 330-31 (E.D.N.Y. 2001) (same).

Plaintiffs argue that the requested fee for Knapp is reasonable in light of the actual number of hours that Knapp worked on this case. It is likely that Knapp, who was primarily working on a contingency basis, performed enough hours of work to support plaintiffs' fee claim. Nonetheless, a federal court in this Circuit cannot award fees without contemporaneous documentation of the work performed. Therefore, the request for Knapp's $25,000 fee is denied without prejudice. Plaintiffs may renew the request within thirty days along with contemporaneous evidence of the hours worked. Because it appears that Knapp did not keep contemporaneous time records, he may submit evidence of his efforts in the case (such as letters written and transcripts of hearings he attended) along with an affidavit describing his work and the time that he spent on these activities.

**d.    Objections to FTM Entertainment Law Firm Fees**

Defendants similarly object to the fee request for FTM
Entertainment Law Firm ("FTM"), which is supported only by a one-
page July 16, 2007 invoice summarizing "[l]egal fees for
professional services on Berov case for the period from May 2002
through May 2007."  Ganem Aff. Ex. Q.  The FTM invoice, unlike
the Knapp retainer agreement, at least includes a summary of the
type of legal work done on this case, the hours performed and
FTM's billable rates.  This summary information, if included in
an attorney affidavit and supported by contemporaneous records,
is adequate to support an attorney fee request.  See Cruz v.
Local Union No. 3 of the IBEW, 34 F.3d 1148, 1160 (2d Cir. 1994)
(finding that an attorney's summary of contemporaneous time
records is adequate support for a fee request).

Because plaintiffs have not provided an attorney affidavit
from FTM describing their efforts, however, it is also difficult
to determine how much of FTM's work was related to plaintiffs'
federal Copyright Act claims.  Berov's persistent reliance on the
Certificate of Authority as a defense rendered issues of Russian
law relevant to plaintiffs' claims, including the claims of
willful infringement under the Copyright Act.  But the materials
submitted by plaintiffs do not provide enough detail to explain
how FTM's legal work was related to Berov's defenses or other
legal issues relevant to the Copyright Act claims.  See Ganem

Aff. ¶ 31 (explaining that FTM provided plaintiffs with "research and opinion on all matters of Russian law that would affect this case and provided necessary documents, such as power of attorneys, from Russia to aid in this litigation"); Ganem Aff. Ex. Q (FTM invoice for work including "analysis of Soviet and Russian legislation," "developing legal positions for the Russian plaintiffs" and "consulting Close-Up attorneys on various aspects of the case from the perspective of Soviet and Russian legislation and legal practices").  Plaintiffs' reply brief, in response to defendants' objections to the FTM fees, argues simply that "there is no dispute [FTM] have spent significant time on the Russian law implications of this case."  Pls.' Reply Br. at 12.  This is not enough to explain how FTM's legal work on Russian law relates to plaintiffs' request for attorney's fees under the Copyright Act.

Therefore, Plaintiffs' request for $17,000 in FTM fees is also denied without prejudice.  Plaintiffs may renew this request within thirty days by submitting adequate documentation for this request, including contemporaneous evidence of the hours worked and an explanation of why FTM's attorney's fees are reimbursable under the Copyright Act.

### e.    Objections to Shapiro Fees

As an initial matter, it should be noted that defendants do

not raise any objections to the hourly rate requested for the
work of Harvey Shapiro ("Shapiro") and his firm Sargoy, Stein,
Rosen & Shapiro.[3]  Plaintiffs are requesting $275 per hour fees
for Mr. Shapiro, $175 per hour fees for his associate Walter-
Michael Lee, and $80 per hour fees for the work of a paralegal.
See Shapiro Aff. ¶¶ 4-6.  These hourly rates surely are
reasonable based on the prevailing rates for legal work requiring
the skills and expertise provided by Shapiro and his colleagues.
See BMS Entertainment/Heat Music LLC v. Bridges, No. 04 Civ. 2584
(PKC), 2007 U.S. Dist. LEXIS 50256, at *7 (S.D.N.Y. July 6, 2007)
(finding higher hourly rates to be reasonable attorney's fee in
copyright case).

     Defendants instead raise objections to some of the specific
tasks included by Mr. Shapiro in his billing statements.  First,
defendants claim that they should not be charged for time spent
researching the possibility of a conflict of interest caused by
Shapiro's prior representation of Berov and Rigma Corporation.
However, as plaintiffs point out, this work was required largely
because of defendants' strenuous objections to Shapiro's
representation of Close-Up.  See, e.g., DE 79.  Having opposed

---

[3]  The Second Circuit has recently explained that a district
court should identify a "reasonable hourly rate" to determine a
"presumptively reasonable fee" when awarding attorney's fees.
See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of
Albany, 484 F.3d 162, 169 (2d Cir. 2007).  This "presumptively
reasonable fee" analysis replaces the Second Circuit's prior
"lodestar" analysis in attorney's fees cases.

Shapiro's representation of Close-Up so vigorously, defendants
cannot now object to the time spent resolving that purported
conflict of interest.

Second, defendants object to Shapiro's inclusion of time
entries addressing plaintiffs' agreement with the settling
defendants.  Defendants rightly note that the plaintiffs cannot
seek an award for attorney's fees for time spent on other
defendants.  See Arclightz and Films Pvt. Ltd. v. Video Palace,
Inc., 303 F. Supp. 2d 356, 364 (S.D.N.Y. 2003).  However, the
invoices cited by defendants remain appropriate here.  Some of
this time was spent researching the impact of a settlement on
non-settling defendants, which is clearly relevant to plaintiffs'
litigation against Berov.  See Shapiro Aff., Ex. A, Invoice 10675
(invoice for legal research regarding impact of settlement on
judgment against non-settling defendant).  Other cited invoices
request reimbursement for time spent on letters and conferences
that were primarily concerned with the Berov litigation and only
addressed the settling defendants in passing.  See id., Invoice
10722 (invoice for drafting letter "regarding approval of
settlement agreement and prejudgment attachment").  Therefore,
there is no need to strike these parts of the fee request.


**f.    Lowenfeld Fees**

Defendants do not raise any specific objections to the fees

14

requested for the work of attorney Lowenfeld, other than the blanket objection concerning the apportionment between registered and non-registered works. As noted above, Lowenfeld's supporting declaration argues that plaintiffs should be awarded Lowenfeld's full attorney fees, without any reduction to account for the works that were not registered under the Copyright Act and therefore not eligible for an award of attorney's fees. See Lowenfeld Decl. ¶ 12.

Lowenfeld reasonably argues that his time on the complaint, discovery and liability phases of this case would not have differed regardless of the number of registered works. He points out that much of his work was made necessary by Berov's "frequent resort to frivolous motions and defenses," particularly Berov's persistence in pressing an untenable reading of the "certificate of authority." See id. ¶ 8. Lowenfeld also notes that plaintiffs benefitted from his expertise in Russian law and his Russian-language fluency, which arguably "saved the plaintiffs many hours" in legal fees. See id. ¶ 11. These arguments all have merit, and suggest that Lowenfeld's fee request is reasonable. Therefore, plaintiffs will be granted all of the fees requested for Lowenfeld's work.

Defendants do not object to Lowenfeld's hourly rate of $250 per hour. As explained in the discussion of the Shapiro fee request, this hourly rate is reasonable for the work done and the

experience required.

**g.   Attorney's Fees Award**

For the reasons explained above, plaintiffs will not be
awarded fees at this time for the work done by Charles Knapp or
FTM Entertainment Law Firm.  Plaintiffs will be awarded the full
$189,625.00 requested for the work of Julian Lowenfeld.
Plaintiffs will be awarded $83,117.50, or half of the $166,234.99
requested, for the work of Harvey Shapiro and his law firm.
Therefore, plaintiffs will be awarded attorney's fees totaling
$272,742.50.

**(2)**

**Other Costs**

As a general rule, "courts routinely award costs to the
prevailing party in copyright cases."  <u>NFL v. Primetime 24 Joint
Venture</u>, 131 F. Supp. 2d 458, 484 (S.D.N.Y. 2001).  "[A]lthough
the authority to award costs in this action is derived from [17
U.S.C.] § 505, caselaw interpreting Rule 54 [of the Federal Rules
of Civil Procedure] and 28 U.S.C. § 1920 provides guidance as to
the types of costs deemed recoverable."  <u>Barrera v. Brooklyn</u>

<u>Music, Ltd.</u>, 346 F. Supp. 2d 400, 405 (S.D.N.Y. 2004).[4]

Defendants object to many of the costs in plaintiffs'
application as beyond the scope of 28 U.S.C. § 1920.  However,
defendant's reading of the costs permitted in this case is too
narrow.  The Copyright Act states that "the court in its
discretion may allow the recovery of <u>full costs</u> by or against any
party other than the United States or an officer thereof."  17
U.S.C. § 505 (emphasis added).  The costs of investigating and
prosecuting this case were entirely due to the defendants'
willful infringement of plaintiffs' protected works.  Therefore,
it is appropriate in this case to ensure that the "full costs" of
investigating and prosecuting this infringement are borne by the
defendant.  <u>Compare</u> <u>Kingvision Pay-Per-View Ltd. v. Lalaleo</u>, 429
F. Supp. 2d 506, 509-10 (E.D.N.Y. 2006) (concluding that similar

---

[4]    Costs allowed under 28 U.S.C. § 1920 include:

>    (1) Fees of the clerk and marshal;
>    (2) Fees of the court reporter for all or any part of
>    the stenographic transcript necessarily obtained for
>    use in the case;
>    (3) Fees and disbursements for printing and witnesses;
>    (4) Fees for exemplification and copies of papers
>    necessarily obtained for use in the case;
>    (5) Docket fees under section 1923 of this title [28
>    USCS § 1923];
>    (6) Compensation of court appointed experts,
>    compensation of interpreters, and salaries, fees,
>    expenses, and costs of special interpretation services
>    under section 1828 of this title [28 USCS § 1828].

Local Rule 54.1 also allows for certain costs including certain
transcripts, deposition costs, witness fees, interpreting costs,
exhibit costs, title searches and docket fees.

provision awarding "full costs" to prevailing party in cable
television theft suits allows for reimbursement of investigator's
fees that might not be taxable under 28 U.S.C. § 1920).  Allowing
these costs is within the court's discretion and furthers the
goals of the Copyright Act to deter copyright infringement and
encourage its enforcement.

Plaintiffs are requesting $116,034.68 in costs, excluding
attorney's fees.  The defendant has raised specific objections to
most of those costs.  These objections will be addressed in turn.

**a.    Warehouse and Storage Fees**

Defendants object to plaintiffs' request for $60,000 for the
rental of warehouse space to store forty pallets of seized
materials.  <u>See</u> Ganem Aff. ¶ 24.  Plaintiffs state that they
moved to a larger warehouse to accommodate the additional 2,000
square feet of seized materials, and that $60,000 represents the
cost of storing 2,000 square feet of seized materials at $6.00
per square foot for the five years of litigation.  <u>See</u> <u>id.</u>
Plaintiffs claim that this cost is "substantially lower" than the
cost of storing the seized materials separately in a public
warehouse.  <u>Id.</u>  Plaintiffs also state that "on several occasions
we have requested defendants' permission to dispose of the seized
material, but defendants' [sic] had always denied such requests;
therefore requiring us to continue to incur costs for storage."

<u>Id.</u>

In opposition to this request, defendants cite <u>U.S. Media</u> <u>Corp., Inc. v. Edde Entertainment, Inc.</u>, No. 94 Civ. 4849, 1999 U.S. Dist. LEXIS 10605, at *33 (S.D.N.Y. July 14, 1999) (Dolinger, Mag. J.), which found that the cost of "the purchase and storage of infringing video tapes" is not recoverable under 17 U.S.C. § 505. However, it is within a court's discretion to award "full costs" under 17 U.S.C. § 505, and the magistrate judge's opinion in <u>Edde Entertainment</u> will not be followed here. Plaintiffs were required to seize and store these videotapes to prove and prosecute defendants' infringement of their protected works. Therefore, these costs are properly reimbursable, much like the costs required for the appropriate storage of records or other materials needed for litigation. <u>See</u> <u>Yamanouchi Pharm. Co.</u> <u>v. Danbury Pharmacal, Inc.</u>, 51 F. Supp. 2d 302, 308 (S.D.N.Y. 1999) (awarding "the cost of storage of documents for this case"); <u>SEC v. Kaufman</u>, 835 F. Supp. 157, 160 (S.D.N.Y. 1993) (allowing reimbursement for costs of storage of records).

Nonetheless, plaintiffs have provided no documentation or evidentiary support for their $60,000 request. Although plaintiffs note their dispute with defendants over the destruction of these seized materials, plaintiffs have not provided an adequate explanation for why the storage of these materials for five full years was necessary to this litigation,

19

or any evidence to document their attempts to dispose of these materials. Plaintiffs also fail to provide any documentation supporting their calculations, such as evidence of their warehouse costs and storage requirements for the seized materials.

Moreover, plaintiffs admit that they did not store these tapes separately. Plaintiffs instead moved their full operations to a larger warehouse, which appears to have been larger than was necessary solely to make room for the seized materials. Awarding $60,000 to plaintiffs under such circumstances, without any concrete evidence that this was a reasonable cost, risks providing more of a subsidy than necessary to support the rent of that larger operation.

Although plaintiffs' argument that they were obligated to store this seized materials is compelling, plaintiffs cannot realistically expect to be awarded $60,000 in costs without a single piece of concrete evidence in support of their calculations. Therefore, plaintiffs' request for $60,000 for the cost of renting warehouse space is denied without prejudice. Plaintiffs may renew this request within thirty days, provided that they document their request with adequate evidentiary support.

**b.    Investigation and Seizure Costs**

Defendants also object to other costs related to the investigation and seizure of the infringing goods. These costs include $348.04 for purchasing unauthorized videotapes from defendants; $192.31 for supplies used during the seizure; $500.00 for a truck rental to transport seized materials; $1902.00 for "Wages For Assistance At Seizure and Controlled Purchases;" and $12,239.18 in fees paid for "Forensic Investigation of Defendants' Computers."

As already noted, courts may, in their discretion, grant investigation costs and other related costs that are reasonable and necessary to the prosecution of plaintiffs' Copyright Act claims. See Impulsive Music, Inc. v. Bryclear Enterprises, LLC, 483 F. Supp. 2d 188, 191 (D. Conn. 2007) (awarding investigator's costs to prevailing party in Copyright Act suit); Arthur Kaplan Co., Inc. v. Panaria Int'l, Inc., No. 96 Civ. 7973 (HB), 1999 U.S. Dist. LEXIS 6315, at *8-9 (S.D.N.Y. Apr. 29, 1999) (same). Any investigative costs that were incurred out-of-pocket by the plaintiffs here were made necessary by Berov's willful infringement of their motion pictures. Therefore, any reasonable and necessary investigative costs incurred by plaintiffs should be reimbursed by defendants.

Costs incurred in connection with the seizure of defendants' infringing goods are similarly reimbursable. It should be noted that there is no dispute that the defendants should be held

responsible for the $5,013.84 in fees incurred by the United States Marshals Service for seizure of defendant's property. Plaintiffs are similarly entitled to reimbursement of other out-of-pocket costs that they incurred in connection with that seizure.

Plaintiff has documented $348.04 in costs for purchases of unauthorized videotapes from defendants. <u>See</u> Ganem Aff. ¶ 5 & Ex. A. Most of these purchases took place in March 2002, prior to the filing of this complaint and the request for an order of seizure. These costs were clearly necessary to the prosecution of this case and should be reimbursed.

Plaintiffs request and document $192.31 in costs for supplies used during the seizure. <u>See</u> Ganem Aff. ¶ 10 & Ex. F. These costs should also be granted to plaintiffs.

Plaintiffs also claim that they paid $500 for a truck rental required to transport seized materials. <u>See</u> Ganem Aff. ¶ 11 & Ex. G. Although this cost may be appropriately reimbursable, plaintiffs' lease agreement fails to include any information about the actual cost paid for the truck rental. Therefore, the costs for the truck rental will not be granted. Plaintiffs may reapply for that cost within thirty days if they can provide a receipt or other documentation to establish the actual costs of the truck rental.

Plaintiffs also request $1902.00 in reimbursement for wages

paid to three workers who assisted with the seizure and
controlled purchases.  These costs, if incurred as part of the
investigation, seizure and storage of the infringing materials,
are appropriately reimbursable.  However, plaintiffs have again
failed to provide any documentation to support these costs, such
as receipts to show that these wages were paid appropriately.
Moreover, plaintiffs' request for these wages includes payments
made from March 2002 until May 2004.  Although these wages may be
reimbursable for March 2002 until May 2002, when plaintiffs were
investigating defendants and making the seizure, the Ganem
Affirmation and plaintiffs' other documents do not provide any
clear explanation for what work was done for the two years after
that, and why that work would be a reimbursable cost.  Therefore,
the request for this cost will be denied without prejudice.
Plaintiffs may resubmit an application for the cost of these
wages if they can submit appropriate documentation and
evidentiary support to show that these wages were legally paid
and necessary to this litigation.

     Plaintiffs also request $12,239.18 for hiring Stroz
Friedberg Investigations to review computers seized from
defendant in the hope of locating relevant information.  This
request is supported by billing statements that include
contemporaneous time records and descriptions of the work that
was performed and by whom.  See Ganem Aff. Ex. I.  See also

<u>Kingvision</u>, 429 F. Supp. 2d at 511 (requiring contemporaneous time records for reimbursement of investigative costs). The request for $12,239.18 in costs paid to this investigative firm appears to be fairly expensive for the amount of work done. Nonetheless, the fact that plaintiffs paid this expense out-of-pocket suggests that they found it to be reasonable and necessary for the investigation of their claims. Therefore, plaintiffs will be reimbursed for this cost.

**c.   Costs of Bonds**

Defendants object to plaintiffs' request for $3,015.00 in premiums for bonds that were required by the court in connection with their application for a seizure and injunctive relief. The defendant again cites <u>Edde Entertainment</u>, where Magistrate Judge Dolinger found that "the cost of securing a bond in conjunction with the granting of preliminary injunctive relief" was not recoverable under 28 U.S.C. § 1920. However, as noted above, 17 U.S.C. § 505 need not be read so narrowly. These bond premiums were a necessary out-of-pocket expense incurred by plaintiffs to pursue this litigation. Plaintiffs have fully documented the $3,105.00 in payments that they made to the Elmer S. Hyde Agency to maintain the bonds. <u>See</u> Ganem Aff. Ex. B. Therefore, this cost will be taxable to the defendant.

**d.  Costs of Translation**

Defendant objects to $3,405 out of the total payments made to plaintiffs' translator.  Defendant suggests that these fees were paid for the translators to attend trial to translate for Mr. Sheydin and Ms. Ganem.  Defendant claims these translation costs are not taxable because Sheydin and Ganem were both party witnesses whose witness fees are not taxable under Local Rule 54.1.  However, although Local Rule 54.1 may enumerate certain instances where translation costs are taxable, this Local Rule does not preclude the reimbursement of other translation costs which are permitted under 28 U.S.C. § 1920(6).  <u>See</u> <u>V-Formation, Inc. v. Benetton Group SpA</u>, No. 01 Civ. 610 (HB), 2003 U.S. Dist. LEXIS 10223, at *11 (S.D.N.Y. July 17, 2003) ("Although Local Civil Rule 54.1(c)(4) enumerates categories of interpreting costs that may be recovered, it does not, however, affirmatively preclude recovery of costs for an interpreter, which is permitted by 28 U.S.C. § 1920(6), to translate a document.").  In addition, plaintiffs have included receipts to document their payments for translation services.  <u>See</u> Ganem Aff. Ex. H.  Therefore, these costs will be reimbursed.

**e.  Trial transcripts**

Defendant objects to $2399.80 in daily trial transcript charges.  Defendant maintains that these transcripts were

"expedited and obtained principally for the convenience of the parties, [and] such fees are not properly recoverable." Defs.' Opp. Br. at 19 (quoting Boisson v. Banian Ltd., 221 F.R.D. 378, 379-80 (E.D.N.Y. 2004)).

Defendant is correct on this point. It is within a court's discretion to award costs for a trial transcript that was "necessarily obtained for use in the case." 18 U.S.C. § 1920(4). However, "[t]o assess the losing party with the premium cost of daily transcripts, necessity – beyond the mere convenience of counsel – must be shown." Gallela v. Onassis, 487 F.2d 986, 999 (2d Cir. 1973). Although there is no bright-line rule for deciding whether a daily transcript was necessary, courts have considered several factors, including (1) the length and complexity of the trial; (2) the need for daily transcripts to examine witnesses; (3) the need for daily transcripts for summation; and (4) whether the credibility of witnesses was crucial in the case. See Strauss v. Envelope Manufacturers Corp., No. CV-98-6320 (DGT), slip op. at 6 (E.D.N.Y. Apr. 22, 2002).

This trial lasted only one week. The case did not include unexpected complexities. Plaintiffs were aided by depositions, including the deposition of Mr. Berov. Under these circumstances, plaintiffs' attorneys could have taken adequate notes during trial to prepare for cross-examination, follow the

court's evidentiary rulings and prepare an effective summation. The daily trial transcripts were, therefore, merely a convenience for the plaintiffs, not a necessity.  See Bucalo v. E. Hampton Union Free School Dist., 238 F.R.D. 126, 129 (E.D.N.Y. Oct. 12, 2006) (denying request for cost of daily trial transcript where trial lasted for eleven days, claims were not unduly complex, and counsel could be expected to take adequate notes to prepare for cross-examination, summation and the jury charge).

Moreover, plaintiffs point out that defense counsel already agreed to share in the costs of a daily trial transcript.  Pls.' Reply Br. at 14.  Therefore, defendant has apparently paid for half of this cost already.  There is no need for additional payment.  Accordingly, the request for $2399.80 taxed for daily transcripts of the trial testimony is denied.


**f.   Miscellaneous costs**

Defendant objects without detail or specific argument to a series of "miscellaneous" costs included in plaintiffs' request. Some of these, including the costs associated with the seizure, have already been addressed.  Most of the remaining costs are reimbursable.  As plaintiffs note, costs for title searches are specifically permitted under Local Rule 54.1(c)(9).  Recording fees for the prejudgment lien are appropriately treated as docket fees permitted under Local Rule 54.1(c)(10).  The $70 cost for a

certified census report documenting the Russian population will be permitted as a necessary litigation expense, as this certified document was introduced by plaintiffs as an exhibit at trial. See Trial Tr., June 13, 2007, 301:8-302:12. The $1,788.12 in expenses associated with filming the seized products will similarly be permitted as a necessary expense incurred for trial.

However, defendant makes an appropriate objection to the $970.50 in costs for trial exhibit binders and tabs. Courts in this Circuit have found that binders are not properly reimbursable, because they are considered to be part of a law firm's overhead that is already paid for in the attorney's fees. See LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998) (finding that ordinary overhead is properly treated as part of an attorney's fee rather than as costs); Vernon v. Port Auth., 220 F. Supp. 2d 223, 232 (S.D.N.Y. 2002) (finding that exhibit tabs fall within the category of overhead costs or supplies and are not a compensable cost); Rees v. GE, 144 F. Supp. 2d 138, 144 (N.D.N.Y. 2001) (denying costs for trial binders and indexes as "ordinary overhead"). In fact, the receipt for the exhibit binders shows that these supplies were purchased by and shipped to plaintiffs' counsel. See Ganem Aff. Ex. N. Therefore, the request for $970.50 for office supplies used to make trial binders will be denied.

## g. Conclusion

In conclusion, plaintiffs' application for costs (other than attorney's fees) will be approved for $ 50,262.38, as explained in the following chart. The total award for full costs and attorney's fees will be $323,004.88.

| REIMBURSABLE COSTS: | |
|---|---|
| Investigator's purchases of unauthorized videotapes: | $ 348.04 |
| Premium for bonds: | $ 3,015.00 |
| Photocopying and compilation fees for complaint: | $ 3,448.53 |
| Filing fee for commencement of action: | $ 150.00 |
| U.S. Marshals seizure fees: | $ 5,013.84 |
| Costs of supplies used during seizure: | $ 192.31 |
| Translation fees: | $ 13,913.00 |
| Forensic investigation of defendants' computers: | $ 12,239.18 |
| Deposition transcripts: | $ 3,686.00 |
| Photocopying fees: | $ 4,779.71 |
| Title search: | $ 300.00 |
| Recording fees for prejudgment lien: | $ 35.00 |
| Certified U.S. Census report: | $ 70.00 |
| Expenses for filming seized products: | $ 1,788.12 |
| Subpoena fees: | $ 120.00 |
| Transcripts for court hearings: | $ 1,163.65 |

| SUBTOTAL OF COSTS (OTHER THAN ATTORNEY'S FEES): | $ 50,262.38 |
|---|---|

| | |
|---|---|
| Julian Lowenfeld attorney fees: | $189,625.00 |
| Sargoy, Stein, Rosen & Shapiro attorney fees: | $ 83,117.50 |
| **TOTAL OF ALL AWARDED FEES AND COSTS:** | **$323,004.88** |

(3)

### Prejudgment Interest

The Copyright Act does not expressly allow or prohibit the award of prejudgment interest. Therefore, this decision is left entirely to the discretion of the court. See In Design v. K-Mart Apparel Corp., 13 F.3d 559, 569 (2d Cir. 1994).

Some courts have declined to award prejudgment interest for willful copyright infringement, finding that prejudgment interest should be reserved for "exceptional" cases, and concluding that damages for willfulness have already been factored into an award of maxiumum statutory damages. See Garden City Boxing Club, Inc. v. Rojas, No. CV-05-1047 (DGT) (MDG), 2006 U.S. Dist. LEXIS 95617, at *26 (E.D.N.Y. Oct. 12, 2006) (Magistrate Judge's Report and Recommendation) (finding prejudgment interest unnecessary where statutory damages and enhanced damages are enough to make the plaintiff whole and are in part punitive); Richard Feiner and Co., Inc. v. Turner Entertainment Co., No. 96 CV 1472 (RO), 2004

U.S. Dist. LEXIS 23869, at * 5-6 (S.D.N.Y. Nov. 23, 2004)
(declining to award prejudgment interest in Copyright Act suit).
Other courts have concluded that prejudgment interest is
appropriate to help deter willful copyright infringement. <u>See</u>
<u>Broadcast Music, Inc. v. R Bar of Manhattan, Inc.</u>, 919 F. Supp.
656, 661 (S.D.N.Y. 1996).

Plaintiffs' request for prejudgment interest is denied in
this case. It is true that Berov was guilty of willful
infringement, and that he should be held liable to the full
extent of the law. But this is not the type of "exceptional"
case where an additional penalty is required. Furthermore, the
jury has already awarded plaintiffs the maximum available
statutory damages and a significant award for the infringement of
the non-registered works. The awarded damages are adequate both
to make plaintiffs whole and to provide a punitive measure
against the defendant. Therefore, plaintiffs' request for
prejudgment interest is denied.


**(4)**

**Cross-Motion for Additional Offset in Jury Verdict**


Defendants have also filed a Rule 60(b)(6) motion asking for
a reconsideration of the pre-trial order that offset the jury
verdict to account for the $250,000 settlement between plaintiffs

and the settling defendants.  Defendants claim that the settlement agreement between plaintiffs and the settling defendants hid a $300,000 payment that was allegedly made in settlement of the claims raised in this suit, and that the jury verdict should be further offset by this $300,000.

Plaintiff has explained that the contested $300,000 payment was not made in settlement of this case, but was made by REW in exchange for tapes of plaintiffs' motion pictures.  <u>See</u> Second Ganem Aff., dated Sept. 6, 2007.  Based on the receipts and documentation provided by plaintiffs, there is no reason to doubt that this payment was made in exchange for goods purchased by the settling defendants.  <u>See</u> <u>id.</u> at Ex. A.  In other words, this payment was made as part of an agreement between the settling parties to permit them to conduct business moving forward, but it was not made in settlement of the claims raised in this suit. Therefore, defendant's request is denied.


### Conclusion

For the reasons explained above, plaintiffs' application for costs (other than attorney's fees) will be approved for $50,262.38, and plaintiffs' application for attorney's fees will be approved for $272,742.50 for a total of $323,004.88 in costs and attorney's fees.  Plaintiffs' request for prejudgment interest is denied.  Defendants' request for a further offset in

the judgment is also denied.  The Clerk of the Court is directed
to enter judgment and close the case.

Dated:      Brooklyn, New York
            November 13, 2007

                              SO ORDERED:

                              _____/s/_____
                              David G. Trager
                              United States District Judge